UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
FREDERICK CARPENTER,

                    Petitioner,

                                        MEMORANDUM AND ORDER
          -against-                     07-CV-3602 (JS)

JAMES CONWAY, Superintendant,

                    Respondent.
-----------------------------------X
APPEARANCES:
For Petitioner:     Frederick Carpenter, pro se
                    Prisoner No. 04-A-0938
                    Attica Correctional Facility
                    P.O. Box 149
                    Attica, NY 14011-0149

For Respondent:     Guy Arcidiacono, Esq.
                    Suffolk County District Attorney's Office
                    Criminal Court Complex
                    200 Center Drive
                    Riverhead, NY 11901

SEYBERT, District Judge:

          Petitioner Frederick Carpenter, pro se, commenced this

action seeking a writ of habeas corpus under 28 U.S.C. § 2254.

For the foregoing reasons, Mr. Carpenter's petition is DENIED.

                            BACKGROUND

I.   The Crimes

          At approximately 11:30 a.m. on the morning of January

8, 2003, Petitioner walked into the State Bank of Long Island in

Farmingdale wearing a black ski mask and carrying a gun.  He

approached a teller window, repeatedly yelling "give me your

money," and held the gun six to eight inches from the teller's

face. (T. 595-597, 600-601.) At that point another teller, Mahtaj Samghabadi, called Petitioner over to her station. (T. 882-883.) Ms. Samghabadi placed money, including $250 in bait money, on her counter for the Petitioner to take. (T. 884, 890.) The bait money was marked with a special strap that identified the teller and bank, among other things. (T. 890, 894-896.) Petitioner grabbed the money, along with a check on the counter that Ms. Samghabadi was about to certify, and left the bank. (T. 884-886, 890.)

Meanwhile, at approximately the same time on that day, Stephen Vaccaro, an employee of the Weeping Willow catering hall located on the same block as the bank, noticed a gold SUV parked in the hall's lot with a woman standing five feet away from the vehicle. (T. 1002, 1004-1005.) A couple minutes later, Vaccaro observed a masked man running to the vehicle, and the woman whom he had seen earlier was sitting in the driver's seat. (T. 1006-1008, 1039-1041.) The man jumped into the passenger side of the SUV, which then spun its tires and drove away. (T. 1008.) Vaccaro was able to write down the license plate number of the vehicle, and he gave it to the police later on the same day. (T. 1008, 1013, 1016, 1438-1440.) Subsequently, on January 12, 2003, Vaccaro was shown a police-arranged line-up where he

recognized Tina Thebault as the woman driving the SUV. (T. 1019-1022.)[1]

The SUV, a Nissan Pathfinder, was located in Brentwood on January 10, 2003, and Detectives Karen Kolsch and Steven Braithwaite began surveillance on the vehicle. (T. 1066-1067, 1142-1143, 1234-1236.) Surveillance continued on January 11, 2003, with Detective Kolsch operating a borrowed Brentwood school security vehicle, and Detective Braithwaite in an unmarked vehicle. (T. 1145-1146, 1238-1239.) They were joined by Detective Lawrence Conde and Detective Sergeant Terence Fanning, who were also in unmarked vehicles. (T. 1146-1147, 1238.) At 8:30 p.m. on January 11, 2003, Detective Kolsch alerted the team that the vehicle had started, and the group followed it through the streets of Brentwood. (T. 1148-1152.) As the SUV stopped at a stop sign, Detective Conde maneuvered his vehicle in front of it, while Detectives Braithwaite and Kolsch boxed the SUV in from the side and behind, respectively. (T. 1151-1152, 1244-1245.) While next to the side of the SUV, Braithwaite observed that Petitioner was driving the Nissan, and just as Braithwaite was about to exit his vehicle, he observed

---

[1] Tina Thebault and William Danielson were Petitioners' co-defendants. Thebault pled guilty to Robbery in the First Degree and Criminal Possession of Stolen Property in the Fourth Degree. Danielson pled guilty to Criminal Possession of Stolen Property in the Fourth Degree.

the Nissan accelerate, ram Detective Conde's car and proceed forward. (T. 1152, 1245-1246, 1247-1248.) Detective Kolsh followed the Nissan, which was driving on the wrong side of the road. (T. 1152, 1247-1248, 1153-1154, 1250-1251.) The SUV sideswiped Detective Kolsch's vehicle, then flipped and landed in a wooded area. After the SUV flipped, Petitioner exited out of the front passenger door and ran away. (T. 1091-1092, 1156-1159, 1253-1254.)

After identifying themselves as police, Detectives Kolsch and Braithwaite told Petitioner to stop. (T. 1160-1161, 1255.) Detective Braithwaite halted Petitioner as he was running and grabbed him. (T. 1161, 1254-1256.) Petitioner, however, struggled with Braithwaite, pulling his arms away and attempting to push the Detective off of him before he was subdued. (T. 1255-1258.) Petitioner, along with Tina Thebault and William Danielson, the passengers in the Nissan, were arrested for Criminal Possession of Stolen Property and transported to the police station. (T. 1162-1163, 1258-1259.)

While at the police station, during the early morning hours of January 12, 2003, Petitioner orally waived his <u>Miranda</u> rights, and admitted committing the bank robbery to Detective Vincent O'Leary. (T. 1459, 1464-1465, 1469.) Petitioner refused to give a written statement, but claimed that the gun used in the robbery was a BB gun, and that it had been discarded

4

along with the mask. (T. 1472-1473, 1479, 1481.) Petitioner also claimed that the money he had stolen had been spent on drugs and on his children. (T. 1468, 1471-1472.) Later that day, Detective Anthony Piazza processed the Nissan, and recovered a check and bank money strap that were identified by Ms. Samghabadi as the items taken by the thief during the robbery. (T. 1370-1374, 1379-1384, 881-882, 892-893.)

## II. Petioner's Pre-Trial Hearings and Trial

On June 5, 2003, the trial court conducted a pre-trial Huntley hearing where it determined that Petitioner's statements to Detective O'Leary were voluntary and admissible. A few months later, on October 14, 2003, the trial court held a Sandoval hearing.

Petitioner's trial took place in October 2003. On the second day of trial, Petitioner provided the court with a list of grievances he had against his assigned attorney, Michael Brown. Among other things, Petitioner complained that Brown would not return his calls, had only visited him twice, failed to object during the prosecution's opening statements, and failed to re-file motions that Petitioner had earlier attempted to file pro se. (T. 642-686.) Petitioner then expressed that he did not want his attorney, did not trust his attorney, and that he would no longer speak with his attorney. (T. 655-656, 667, 673-674.) After Brown disputed Petitioner's claims

5

concerning his representation, the court informed Petitioner that either Brown was going to represent him, or Petitioner was going to represent himself. (T. 653-654, 673, 657.) The court rejected Petitioner's request for substitute counsel, finding that there were no meritorious reasons why counsel should be excused, and that good cause had not been shown for any substitution. (T. 666-667, 675-680.) At this point, prior to resuming the trial, Brown informed the court that Petitioner had indicated to him that he would disrupt the proceedings if Brown continued to act as his attorney. (T. 676-677.) After being admonished by the court, Petitioner promptly stated in the presence of the jury that he did not want Brown to represent him, and that he was choosing to represent himself. (T. 678, 691-693.) Once the jury was escorted from the courtroom, the court made a detailed inquiry of Petitioner to ensure that he understood the risks of proceeding pro se, then allowed him to represent himself for the remainder of the trial, with Brown acting as his legal advisor. (T. 687, 711-721.)

III.  Sentencing and Post-Trial Appeals

On January 14, 2004, the jury convicted Petitioner of Robbery in the First Degree, Criminal Possession of Stolen Property in the First Degree, Criminal Possession of Stolen Property in the Fourth Degree, Criminal Mischief in the Second Degree, and Resisting Arrest. Petitioner's sentences for the

6

various crimes were to run concurrently, with the longest being twenty-two years to life for the robbery conviction. Upon the People's recommendation, Petitioner was sentenced as a persistent felony offender because he admitted that he had previously been convicted of at least two felonies for which he was sentenced to periods of incarceration longer than one year. (S. 2.) Both the prosecutor and court noted Petitioner's threat to the community, twenty year criminal history, lack of respect and discipline, and the trauma faced by the bank tellers, which compelled the sentencing court to conclude that his extended incarceration and lifetime supervision were in the public interest. (S. 15-19, 22-32, 35.)

Petitioner, represented by the Legal Aid Society, filed a direct appeal to the Appellate Division, Second Department on September 2, 2005. Petitioner's appeal presented six grounds: (1) that his right to counsel was violated because the trial court failed to make sufficient inquiry into his request for new counsel; (2) that the trial court failed to undertake the required searching inquiry regarding the risks of self-representation; (3) that the evidence was insufficient to convict him beyond a reasonable doubt; (4) that New York's persistent felony offender sentencing laws, pursuant to Penal Law § 70.10 and Criminal Procedure § 400.20, are unconstitutional as a violation of due process; (5) that the

trial court failed to put forth the reasons why it imposed a persistent felony status upon him; and (6) that his sentence of twenty-two years to life imprisonment, as a persistent felony offender, is harsh and excessive.

On April 11, 2006, the Appellate Division affirmed Petitioner's judgment of conviction in People v. Carpenter, 28 A.d.3d 572 (2d Dep't 2006). That court found that Petitioner's first, second, and sixth grounds were without merit, and that the third, fourth, and fifth grounds were unpreserved for appellate review, noting that in any event, they were also without merit. Id. at 572-73. Petitioner applied for leave to appeal to the Court of Appeals, and was denied on June 22, 2006. People v. Carpenter, 819 N.Y.S.2d 878 (N.Y. 2006).

On August 23, 2007, Petitioner filed an application for coram nobis relief in the Appellate Division on the grounds that he received ineffective assistance of counsel. This application was subsequently denied on December 4, 2007. People v. Carpenter, 46 A.D.3d 566 (2d Dep't 2007).

Petitioner commenced this action on August 21, 2007. After Petitioner lost his state court coram nobis action, the Court granted leave for Petitioner to supplement his Petition with the claims he set forth in his coram nobis application.

8

DISCUSSION

I. <u>Standards of Review</u>

    A.    <u>Federal Habeas Review of State Convictions</u>

        Petitioner filed this action after the April 24, 1996 effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and accordingly, AEDPA's provisions apply to his case. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 402, 120 S. Ct. 1479, 1518, 146 L. Ed. 2d 389 (2000). Under 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This deferential standard of review is applied so long as the "federal claim has been 'adjudicated on the merits' by the state court." <u>Cotto v. Herbert</u>, 331 F.3d 217, 231 (2d Cir. 2003). "A state court adjudicates a petitioner's federal constitutional claims when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court decision, or it "confronts a set of facts that are materially distinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Penry, 532 U.S. at 792 (quoting Williams, 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

10

B. <u>Procedural Default</u>

Notwithstanding the above, a federal court cannot generally afford a § 2254 petitioner relief on claims that the state courts did not adjudicate on the merits, but instead denied based on an independent and adequate state procedural rule. <u>Escalona v. Sears</u>, 06-CV-6769, 2008 WL 4534007, at *8 (E.D.N.Y. Oct. 8, 2008). The state court's reliance on state law must be clear from the face of the opinion. <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). A claim can be procedurally defaulted even if the state court "says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits." <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005).

In order to overcome the bar to review on a procedurally defaulted claim, petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law." <u>Coleman</u>, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640. Cause can be established by showing "that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable." <u>Id.</u> at 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (internal quotation marks omitted). Prejudice is shown by demonstrating that the "alleged

error worked to [petitioner's] 'actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Cherry v. Walsh, 09-CV-1452, 2009 WL 2611225, at *5 (E.D.N.Y. Aug. 25, 2009) (quoting Torres v. Senkowski, 316 F.3d 147, 152 (2d Cir. 2003)). In the alternative, if the petitioner is unable to establish cause and prejudice, procedural default may be excused if it can be shown "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

## II. Petitioner's Claims

Petitioner raises a number of claims in his Petition and Supplemental Petiton, and each will be discussed in turn.

### A. Refusal to Substitute a New Attorney

Petitioner's first claim alleges that the trial court violated his Sixth Amendment right to counsel when it refused to appoint substitute counsel for him. The state courts decided this claim on its merits, so the Court applies AEDPA's deferential standard of review. See Carpenter, 28 A.D.3d at 573.

A criminal defendant has two constitutionally guaranteed options with respect to his representation at trial. First, a defendant has a Sixth Amendment "right to the assistance of counsel before he can be validly convicted and punished by imprisonment." Faretta v. California, 422 U.S. 806,

12

807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Second, a defendant has the "constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." Id. Once trial has begun, however, "a defendant does not have the unbridled right to reject assigned counsel and demand another." United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972). Rather, the "defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict," in order to warrant a substitution of counsel during trial. Calabro, 467 F.2d at 986. When the trial judge receives a "seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction," McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981) (internal citations and quotations omitted), but if the proffered reasons are insubstantial and the defendant receives competent representation from counsel, the court's failure to inquire further constitutes harmless error. See id.

On a § 2254 petition, a federal court must decide whether the state court's applied these principles in a manner not contrary to, and without an unreasonable application of, clearly established federal law. See generally Nelson v. Brown, 07-CV-3568, 2009 WL 6340020, at *13 (S.D.N.Y. July 1, 2009). In so deciding, it is well-settled that "the more common complaints

13

defendants make in efforts to be rid of an appointed attorney, namely, complaints regarding strategic decisions such as whether to file certain motions, pursue certain evidentiary leads, object to the introduction of certain evidence at trial, and call certain witnesses, do not give rise to a conflict of interest," or otherwise warrant habeas relief.  Id. (internal quotations and citations omitted).

Here, Petitioner's disputes with counsel almost entirely concern these kinds of "common complaints."  See supra at 5-6.  And, although Petitioner also alleges that Brown did not sufficiently communicate with him (i.e., only visited him twice), the state courts did not violate, or unreasonably apply, clearly established federal law in finding that Petitioner's complaints did not amount to the kind of "complete breakdown in communication" that would entitle Petitioner to new counsel. Calabro, 467 F.2d at 986.  Indeed, courts have denied habeas relief despite significantly greater communication problems between attorney and client.  See Shorter v. Corcoran, 05-CV-0417, 2009 U.S. Dist. LEXIS 89469 at *11-14 (W.D.N.Y. Sept. 28, 2009) (no habeas relief granted even though trial court denied request to substitute counsel after attorney "admitted that he failed to visit defendant at the jail"); Tom v. Artuz, 97-CV-4697, 1999 U.S. Dist. LEXIS 11485, at *15 (S.D.N.Y. July 27, 1999); see also United States v. Jones, 99-CR-0264, 2004 U.S.

Dist. LEXIS 12761, at *12 (D. Conn. 2004) (memorializing decision denying defendant's pre-trial request for new counsel). Consequently, the trial court's failure to replace Brown with substitute counsel, during trial, does not warrant § 2254 relief.

Nor can the Court find that the state courts violated or unreasonably apply clearly established federal law in rejecting Petitioner's argument that the trial court failed to sufficiently inquire into Petitioner's reasons for demanding new counsel. On the contrary, the trial court conducted a lengthy back-and-forth dialogue with Petitioner that consumed fifty-one pages of the transcript. (T. 641-692.) During this inquiry, the trial court listened patiently as Petitioner meticulously described his complaints about Brown's representation, and repeatedly questioned Petitioner about the nature of his dispute with Brown. Indeed, given the trial record, it is clear that the trial court went above-and-beyond its duty to make sufficient inquiry. Thus, this claim fails.

B. <u>The Trial Court made Sufficient Inquiry into Petitioner's Desire to Proceed Pro Se</u>

Petitioner's second argument raised in his Petition is that the trial court failed to conduct a searching inquiry into whether or not he was aware of the risks inherent in proceeding <u>pro</u> <u>se</u>. Petitioner contends that he did not have the capacity

to make an intelligent decision as to the waiver of his counsel, and that he chose to proceed pro se only because he felt that he had no other option, due to his perceived conflict with Brown. Similar to Petitioner's first claim, the Appellate Division also denied this claim on its permits. See Carpenter, 28 A.D.3d at 573. Thus, the Court can review this claim while applying § 2254's usual deference.

A defendant is properly allowed to proceed pro se when he is "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (internal citation omitted). Furthermore, a court's refusal to assign new counsel when good cause has not been shown does make the defendant's decision to proceed pro se involuntary. See McKee, 649 F.2d at 934.

Here, the Court finds that the state courts did not violate or unreasonably apply clearly established federal law in finding that the trial court sufficiently inquired into Petitioner's request that he be allowed to proceed pro se. The trial court repeatedly admonished Petitioner that he was not competent to represent himself. (See, e.g., T. 688, 689, 696, 698.) The trial court then asked Petitioner if he knew how to cross-examine witnesses, or what motions to file. (T. 699,

700.)  The trial court noted that his attorney had gone to law school and passed the bar exam, while Petitioner had not completed college.  (T. 715-716.)  The trial court then described to Petitioner the responsibilities inherent in proceeding pro se, noting, among other things, that he could only ask questions to witnesses, not make statements.  (T. 716-725.)  The trial court also confirmed that Petitioner was not under the influence of drugs or alcohol, and had performed legal research in the jail.  (T. 721, 727.)  And the trial court permitted Petitioner to proceed pro se only after a back-and-forth dialogue that totaled 86 pages on the transcript, with the trial court repeatedly recommending that Petitioner keep Brown as counsel.  (T. 641-727.)  Given these facts, the Court finds that Petitioner did not bring this habeas ground in good faith.

C.  Petitioner's Sufficiency and Weight of the Evidence Claims are Procedurally Barred, and in any Event, Meritless

The third argument Petitioner makes in his Petition is that the evidence presented at trial did not support his conviction beyond a reasonable doubt.  This claim was also presented on his direct appeal to the Appellate Division, which denied it as "unpreserved for appellate review."  Carpenter, 28 A.D.3d at 572.  Thus, it is procedurally barred.  See Green, 414 F.3d at 294.

In any event, this claim is without merit. The evidence against Petitioner in this case was overwhelming. Among other things, the prosecution adduced that Petitioner was arrested while driving the stolen vehicle used in the robbery-- with the check and bait money strap taken in the robbery found in the SUV--after driving into two police cars in an attempt to resist arrest. The prosecution also introduced Petitioner's confession. Thus, a rational trier of fact "could have found proof of guilt beyond a reasonable doubt," precluding § 2254 relief. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

D. Petitioner's Constitutional Argument Concerning New York's Persistent Felony Sentencing Statutes is Procedurally Barred, and in any Event, Meritless

Petitioner's fourth argument is that New York's persistent felony offender statutes, Penal Law § 70.10, and Criminal Procedure Law § 400.20, are unconstitutional as a violation of due process. Petitioner raised this claim on direct appeal to the Appellate Division, which denied it as "unpreserved for appellate review." Carpenter, 28 A.D.3d at 573. Thus, it is procedurally barred. See Green, 414 F.3d at 294. In any event, the Second Circuit recently rejected a similar claim on its merits. See Portalatin v. Graham, 624 F.3d 69, 93 (2d Cir. 2010).

18

E.  <u>Petitioner's Persistent Felony Offender Status Claim
    is Procedurally Barred and, in any Event, Meritless</u>

Petitioner's fifth argument for Habeas relief is that
the trial court failed to set forth on the record its reasons
for imposing persistent felony offender status on him.  The
Appellate Division rejected this claim as "unpreserved for
appellate review and, in any event, [] without merit."
<u>Carpenter</u>, 28 A.D.3d at 573.  Thus, it is procedurally barred.
In any event, it is meritless.  Petitioner himself admitted to
having been convicted of two or more previous felonies.  (S. 7,
12-14).  And these admissions sufficed to qualify him as a
persistent felony offender under the relevant statutes.  <u>See</u>
<u>People v. Blaydes</u>, 19 A.D.3d 935, 936, 797 N.Y.S.2d 630 (3d
Dep't 2005).

F.  <u>Petitioner's Sentence is Neither Harsh nor Excessive</u>

The sixth argument that Petitioner raises in his
Petition, and which was also raised on direct appeal, is that
his sentence of twenty-two years to life imprisonment as a
persistent felony offender is harsh and excessive.  The
Appellate Division decided this claim on the merits, stating
that "[t]he sentence imposed was not excessive."  <u>Carpenter</u>, 28
A.D.3d at 573.

It is well-settled in the Second Circuit that "[n]o
federal constitutional issue is presented where . . . the

sentence is within the range prescribed by state law." <u>White v.</u> <u>Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, Petitioner's sentence was within the persistent felony offender statutory guidelines, with the maximum sentence being twenty-five years to life imprisonment. As a result, Petitioner will not be granted relief on this claim.

G. <u>Petitioner Received Effective Assistance of Appellate Counsel</u>

Petitioner next argues that he was denied effective assistance of appellate counsel. The Appellate Division denied this claim on the merits. <u>See</u> <u>People v. Carpenter</u>, 46 A.D.3d 566, 566 (2d Dep't 2007). So the Court affords the Appellate Division's decision the deference its entitled to under § 2254.

In <u>Harrington v. Richter</u>, the Supreme Court recently clarified the standard for assessing ineffective assistance of counsel claims when § 2254(d)'s deference applies. 131 S. Ct. 770 (2011). The Supreme Court noted that, under § 2254(d), "the question is not whether counsel's actions were reasonable" under the familiar <u>Strickland</u> standard for judging ineffective assistance of counsel. <u>Id.</u>, 131 S. Ct. at 788. Instead, the "question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u> (also noting that "[t]he standards created by <u>Strickland</u> and §

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so") (internal quotations omitted).

Here, Petitioner appears to argue that appellate counsel was constitutionally ineffective for three separate reasons: (i) appellate counsel failed to include certain claims supporting an argument that Petitioner and trial counsel had irreconcilable conflict; (ii) appellate and trial counsel should have argued that he was deprived of counsel at critical stages of the proceedings; (iii) appellate counsel failed to argue that the grand jury proceedings [2] violated his rights. [3]    The Court addresses these arguments in turn.

## i. <u>Appellate Counsel was not Ineffective for Failing to Include Certain Arguments</u>

Petitioner argues that his appellate counsel was ineffective because he failed to make certain arguments supporting Petitioner's claim that he had irreconcilable conflicts with his trial counsel. Specifically, Petitioner points to appellate counsel's failure to reference a letter

---

[2] This argument blends an ineffective assistance of appellate counsel claim with claims for ineffective assistance of trial counsel, and direct attacks on the District Court's and the prosecution's conduct.

[3] Respondent argues that some of these claims are either unexhausted or procedurally barred from review. Petitioner disputes this argument. For purposes of judicial convenience, the Court elects not to address the issue of procedural default, and instead will consider the merits of the claims Petitioner raised in his supplemental pleading.

written to the trial court, a grievance filed with the Grievance Committee, and trial counsel's statement on the record noting the breakdown in communications. "It may well have been better strategy if counsel had framed the [] argument" as Petitioner now thinks he should have, but, even pre-AEDPA, such disputes did not give rise to an ineffective assistance of counsel claim. Giacalone v. U.S., 739 F.2d 40, 44 (2d Cir. 1984). Here, Petitioner merely "second-guess[es]" appellate counsel's "reasonable professional judgments" as to how to best present Petitioner's irreconcilable conflicts claim. Walker v. Superintendent, 06-CV-1932, 2009 WL 5166270, at *6 (E.D.N.Y. Dec. 28, 2009). Accordingly, there was a "reasonable argument that counsel satisfied Strickland's deferential standard," precluding § 2254 relief. Harrington, 131 S. Ct. at 788.

ii. Petitioner was not Deprived of Counsel at any Critical Stage of the Proceedings

Petitioner next argues that he was deprived of meaningful representation of counsel when his initial trial counsel failed to appear before the court on January 17, 2003, when the prosecutor informed the court that Petitioner was indicted, and on January 22, 2003 when the prosecutor informed the court that the indictment had been handed up in the county court the day before. This argument is meritless. The Sixth Amendment guarantees the assistance of counsel only when

necessary to assure a meaningful defense. <u>United States v.</u> <u>Wade</u>, 388 U.S. 218, 225, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The events that occurred on the dates Petitioner complains about were procedural. <u>See</u> N.Y. Crim. Proc. Law § 180.80. So nothing counsel could have done at those court dates could have affected Petitioner's defense.

### iii. Petitioner's Grand Jury Claims

Finally, Petitioner raises a number of claims concerning the state court grand jury proceedings, alleging error by the District Court of Suffolk County, ineffective assistance of both trial and appellate counsel, and prosecutorial misconduct. But all these claims are meritless, because "deficiencies in state grand jury proceedings" are "not cognizable in a habeas corpus proceeding in federal court." <u>Turner v. Brown</u>, 07-CV-3950, 2010 WL 4941474, at *4 (E.D.N.Y. Nov. 30, 2010) (citing <u>Davis v. Mantello</u>, 42 Fed. App'x 488, 490 (2d Cir. 2002) (unpublished)). To that end, "ineffective assistance claims concerning his state grand jury rights are [also] not cognizable on habeas review." <u>Ballard v. Costello</u>, 01-CV-1000, 2001 WL 1388297, at *2 (E.D.N.Y. 2001). Thus, all of Petitioner's grand jury claims fail.

## III. Certificate of Appealability

Under 28 U.S.C. § 2253(c), a district court may issue a Certificate of Appealability "only upon the substantial

showing of the denial of a constitutional right.  The petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys General</u>, 396 F.3d 207, 209 (2d Cir. 2005) (citations and quotations omitted).  Because there can be no debate among reasonable jurists that Petitioner's claims do not entitle him to § 2254 habeas relief, the Court will not issue a Certificate of Appealability.

CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's Writ of Habeas Corpus in its entirety.  The Court will not issue a certificate of appealability.  The Clerk of the Court is directed to mark this matter as CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.


Dated:     Central Islip, New York
           February 25, 2011